AYRES, Judge.
By this action the State of Louisiana, through the Department of Highways, expropriated immovable property owned by the named defendant and leased to the defendant, Arkansas Fuel Oil Corporation, now, by amendment of charter, the Cities Service Oil Company. The expropriation was made necessary by right-of-way requirements in connection with a proposed construction of an underpass beneath Missouri Pacific railroad tracks on South Second Street, a segment of State Highway-15 as it traverses the City of Monroe.. Alleging that the property taken had a value of $20,000.00, the State made a deposit of that sum in the registry of the court and obtained an order transferring title to the State. The defendants, by appropriate and timely action, asserted that the value of the property expropriated was $32,118.00. Thus, the issue presented to' the trial court related only to a question of the just and adequate compensation which should be paid to the defendant.
From the evidence introduced, the trial court concluded that the property had a value of $31,375.00 and, accordingly, ordered that an additional deposit of $11,-375.00 be made by the State. From a judgment accordingly rendered and signed, plaintiff, the State of Louisiana, appealed.
Appellant’s primary complaints, as we understand from a study of its brief, concern the qualifications of the expert witnesses testifying for the defendants, with particular reference to the value of their opinions, which were said to be without a. sound basis and not well grounded from' the standpoint of sincerity and good sense.. Thus, it was contended, there was no competent evidence before the trial court, or now before this court, upon which a judgment in defendants’ favor might be predicated. It was urged that the rule that, in expropriation suits such as this, the burden of proof is upon the defendant to establish its claim (LSA-R.S. 48:453) be applied.
*891 From our review of the record, we find that it is barren of any objection to the witnesses’ qualifications; nor does the appellant now point out any specific reason for their disqualification, or any particular reason or basis for disregarding their testimony. Nor, we may further observe, has any specification of error in the trial court’s •conclusions or judgment been particularly pointed out. In this connection, it may be .appropriate to observe that, under the Uniform Rules of the Courts of Appeal of this State, Rule IX, Section 3, 8 LSA-R.S., one •of the requirements as to a brief is that it contain “ * * * a specification of the .alleged errors relied upon * *
For all practical purposes, the situation here is comparable to that of Perkins v. Buchler, 223 La. 179, 65 So.2d 130, relative to which the Supreme Court stated:
“The appellants in the instant case have not pointed out any error in the judgment of the district court or filed .any brief, and have thus left to this -court the task of ascertaining whether the judgment of the lower court was correct in law and in fact. It is well settled in the jurisprudence that in these circumstances an appellate court may affirm such judgment under the presumption that the judgments of the district courts are correct.”
See, also: Succession of Bailey, 232 La. 824, 95 So.2d 326. The rule was likewise recognized in Glorioso v. Glorioso, 223 La. 357, 65 So.2d 794. There, it was held that, where appellant’s counsel did not point to any discrepancies in appellee’s evidence, failed to disclose any reason why the judge should not have believed appellee’s testimony and preferred it to the testimony of appellant and his witnesses, but simply said that the evidence preponderated for appellant because appellant was corroborated by two witnesses, the appellant failed to carry the burden of proof of demonstrating that the decision was obviously wrong.
A rule uniformly established in the jurisprudence is that a judgment of a trial court is presumptively correct. It is therefore the appellant’s duty to point out any error in the judgment appealed; otherwise, the appellate court may rely upon the presumption that the judgment is correct and affirm it. Succession of Bailey, supra; Perkins v. Buchler, supra; Chapman v. Lalumia, 154 So.2d 93, La.App., 4th Cir.1963; Dorsey v. Corrugated Asbestos Contractors, Inc., 147 So.2d 233, La.App., 4th Cir. 1962.
We have, however, examined the record, read the testimony taken on the trial in the lower court as well as counsel’s briefs, considered the trial judge’s reasons for judgment, and find no error patent on the face of the record, either in law or in fact. This opinion could properly be concluded at this point.
Nevertheless, we deem it appropriate and proper that we should discuss the facts and the legal principles governing them.
The property herein expropriated was a tract of land upon which a gasoline service station and related improvements were located and had been so located since their construction in 1955. It may be noted that the expropriation was effected by the filing of this action June 7, 1961. The property, situated on the east side of South Second Street, State Route 15, and north of the railroad right of way, is located approximately ten blocks from the principal business district of the city. With a west frontage of 117.92' feet on Route 15, the tract has a width of 147.15 feet on the north, 42.25 feet on the south, with a rear, or eastern, boundary of 151.85 feet adjacent to the railroad right of way. The tract has an area of 11,524.5 square feet.
The improvements on the property expropriated, and at the time thereof, consisted of a 2-bay service station building, 1,244 square feet in area of concrete-block construction on a steel-reinforced concrete-slab foundation, with a 5-ply asphalt-and-gravel roof, bonded for a period of 20 years. The interior of the building was divided into a wash bay and a grease bay, *892 storeroom, sales-promotion room, and two rest rooms. The interior walls, of smooth-surfaced concrete-block construction, had a finish of paint, porcelain, and wood trim. The front and sides of the sales-promotion room were glass enclosed. Overhead sliding glass doors enclosed the front of the wash and grease bays. Situated in front of the building was a concrete apron whose area was estimated to contain at least 772 square feet. On top of this apron there was constructed, of concrete, a 3 x 16-foot island which accommodated three gasoline-computer pumps. The lot to the rear of the building and apron was, to the extent of 3,000-4,000 square feet, surfaced with asphalt. Underneath the surface were three 3,000-gallon gasoline storage tanks and a tank of 550-gallon capacity for storage of waste materials.
No controversy is presented as to the legal principles applicable to this as well as to all expropriation proceedings. In determining the factual issue as to the compensation to be paid, we are mindful that the measure of compensation is the market value of the property as of the date of its taking, that is, the date of institution of this action; that the term “market value,” as used in expropriation proceedings, is the price a willing and informed purchaser will pay and a willing and informed seller will accept under ordinary and usual conditions. Moreover, the best criteria of the market value of expropriated property are “com-parables,” that is, recent sales of similar property in the vicinity of the property expropriated.
The evaluations of the subject property, as made by the four appraisers — two for the State and two for the defendants — were predicated primarily upon comparisons with the sales of comparable properties, or as nearly so as could be located. The trial court, in a written opinion, painstakingly summarized and analyzed the testimony of all the experts, and, from its consideration, made its findings and determinations as to the compensation to which defendant was held entitled.
The land and the improvements were separately appraised by all the appraisers. Messrs. Leroy Cobb and R. M. Gochenour, for the State, valued the land at 65‡ and 80‡ per square foot, or in the sums of $7,-491.00 and $9,200.00, respectively. Messrs. E. A. Porter, Jr., and Robert B. Sims, for defendants, placed a valuation on the land of $1.20 and $1.25 per square foot, or in. the sums of $13,830.00 and $14,425.00, respectively.
Plaintiff’s witnesses found the best use-of the property to be that of a multifamily residence, notwithstanding a service station: had been located on the property for a. period exceeding five years. Defendants’' witnesses were of the opinion that the-highest and best use of the property was-for commercial purposes, such as a filling station, the use for which it was being, utilized at the time of the expropriation. The fact that the main line of a railroad' adjoins the property on the rear, and that another service station is located across, the street, which street is a main thoroughfare, tends to support the conclusions reached by defendants’ witnesses, particularly in-view of the fact that there had been erected, and placed in use, upon the lot the-necessary buildings and equipment for filling-station purposes.
In making his appraisal, Gochenour testified that he made use of four “compar-ables,” each with a value of twice that placed upon defendant’s property. This; reduction was said to be due to the fact that a view of the filling station was obscured from one direction by an apartment house. Cobb, although familiar with the “comparables” used by Gochenour, was of the opinion they were inapplicable. Cobb-was influenced largely by the purchase price-of $3,250.00 paid by one Armstrong for the-subject lot in 1954 and by its sale in 1955 to the Arkansas Fuel Oil Corporation for a price of $6,000.00. The price stated, *893 however, did not take into consideration the construction of a service station on the lot.
Porter used six comparables, three of which were filling stations, one purchased for a service station but never built, and two vacant. Sales of these properties covered a period of two years, from late 1956 until late 1958. Prices for these “com-parables” ranged from $1.22 to $1.86 per square foot. These were the bases of Porter’s evaluation of the subj'ect property, as aforesaid, at $1.20 per square foot, or in the sum of $13,830.00.
Porter and Sims appraised improvements at $17,540.00 and $17,545.00, respectively. Plaintiff’s appraisers did not take into consideration the value of the four underground storage tanks in arriving at the total of their appraisals. They, however, evaluated the lot and improvements at $20,000.00. Deducting the sums at which they appraised the real estate, their appraisals of the improvements were $12,-509.00 for Cobb and $10,800.00 for Goch-enour. Defendant’s total appraisals were in the sums of $31,375.00 and $31,700.00, respectively.
From the facts disclosed in the record, we conclude, as did the trial court, that defendant’s witnesses properly classified the property, for its highest and best use, as commercial property; that plaintiff’s witnesses were in error in classifying the property as residential property; and, moreover, that the “comparables” utilized by defendant’s witnesses more nearly approached defendant’s property than those used by plaintiff’s witnesses.
The record, as we have pointed out, contains testimony which, if believed, amply supports defendant’s contentions as to the value of the property. The trial court believed these witnesses. We find nothing in the record which would indicate that the court committed manifest error in this regard or as to the conclusions finally reached as to the value of the property. No such error, as heretofore observed, has been pointed out to us; nor has our review of the record disclosed such an error.
The judgment appealed is therefore affirmed at plaintiff-appellant’s cost, insofar as such cost is, by law, assessable against it.
Affirmed.